PD-1130-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/21/2015 2:47:41 PM
Accepted 10/21/2015 3:57:41 PM
ABEL ACOSTA
CLERK

NO.  PD-1130-15

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## AT AUSTIN

---------------------------------------------------------------

## NO. 14-14-00353-CR

## IN THE COURT OF APPEALS FOR THE

## FOURTEENTH DISTRICT OF TEXAS

## AT HOUSTON

---------------------------------------------------------------

**ANDREW DEMOND HAYNES,**               **APPELLANT**

**V.**

**THE STATE OF TEXAS,**               **APPELLEE**

---------------------------------------------------------------

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---------------------------------------------------------------

FILED IN
COURT OF CRIMINAL APPEALS

October 21, 2015

ABEL ACOSTA, CLERK

**Winston E. Cochran, Jr.**
Attorney at Law
Texas Bar No. 04457300
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
E-mail:winstoncochran@comcast.net
Counsel for Appellant

ORAL ARGUMENT REQUESTED.

## STATEMENT REGARDING ORAL ARGUMENT

The appellant requests oral argument because this cause presents an important question of statutory interpretation affecting the sufficiency of the evidence.

## LIST OF INTERESTED PARTIES

| | |
|---|---|
| Andrew Demond Haynes | Appellant |
| Vic Wisner<br>8431 Katy Freeway, Suite 101<br>Houston, TX 77024 | Appellant's counsel at trial |
| Winston E. Cochran, Jr.<br>P.O. Box 2945<br>League City, TX 77574 | Appellant's counsel on appeal |
| The State of Texas | Appellee |
| Devon Anderson<br>Harris County District Attorney<br>1201 Franklin, Suite 600<br>Houston, TX 77002 | Counsel for the Appellee |
| Rishakh Gohda<br>Jennifer Falk | Assistant District Attorneys |
| Hon. Jay W. Burnett | Visiting Judge, 337th District Court, Harris County, Texas |

i

# TABLE OF CONTENTS

Statement Regarding Oral Argument   i

List of Interested Parties   i

Table of Authorities   iii

Statement of the Case   1

Statement of Procedural History   2

Question Presented for Review   2

Did the Court of Appeals err in holding that the State was not required to prove that the defendant knew that the quantity of contraband was large enough to result in an increased punishment range?

Reasons for Review   3

   A.   The Factual Background   3

   B.   The Burden of Proof Under *Apprendi*   7

   C.   Applying *Apprendi* to Texas Narcotics Law   11

   D.   Insufficient Evidence of Knowledge as to Quantity   15

Prayer for Relief   18

Certificate of Compliance   17

Certificate of Service   18

Appendix: Opinion and Judgment of the Court of Appeals

# TABLE OF AUTHORITIES

**Cases**            **Page**

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,
147 L.Ed.2d 435 (2000)      7, 9-11

*Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995)      14

*Burrell v. State*, 445 S.W.3d 761(Tex. App. – Houston
[1st Dist.] 2014, pet. ref'd)      7-8

*Cuellar v. State*, 70 S.W.3d 815 (Tex. Crim. App. 2002)      15

*Deshong v. State*, 625 S.W.2d 327 (Tex. Crim. App. [Panel Op.] 1981)      8

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)      8-9

*Moreno v. State*, 195 S.W.3d 321 (Tex. App. –
Houston [14th Dist.] 2006, pet. ref'd)      14

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)      8

*United States v. Gamez-Gonzalez*, 319 F.3d 695 (5th Cir. 2003), *cert.*
*denied* 538 U.S. 1068, 123 S.Ct. 2241, 155 L.Ed.2d 1126 (2003)      10-11

*United States v. Javier Cruz*, 388 F.3d 150 (5th Cir. 2004), *cert. granted*
*and vacated*, 544 U.S. 1013, 125 S.Ct. 1969, 161 L.Ed.2d 846 (2005)      11

*United States v. Valencia-Gonzalez*, 177 F.3d 344 (5th Cir. 2004),
cert. denied 528 U.S. 894, 120 S.Ct. 222, 145 L.Ed.2d 187 (1999)      10

*United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464,
130 L.Ed.2d 372 (1994)      11

*Wiersing v. State*, 571 S.W.2d 188 (Tex. Crim. App. 1978)      8

## Constitutional Provisions, Statutes, Rules

21 U.S.C. §841(a)     10

21 U.S.C. §841(b)     10, 12, 14

TEX. HEALTH & SAFETY CODE §481.112     11-12

TEX. HEALTH & SAFETY CODE §481.115     13

TEX. R. APP. PROC. 66.3(b)     8

TEX. R. APP. PROC. 66.3(d)     8

U.S. CONST. Amend. XIV     9

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW the appellant, Andrew Demond Haynes (hereinafter "Haynes"), through the undersigned counsel, and respectfully requests that this Court grant discretionary review of the decision of the Court of Appeals for the Fourteenth District of Texas, for reasons set forth as follows.

## STATEMENT OF THE CASE

Haynes was indicted for Possession of a Controlled Substance, namely cocaine in an amount between four and 200 grams, with the intent to deliver it (CR-6).[1] At the conclusion of the evidence, the trial court judge's instructions to the jury included an instruction on the lesser included offense of Possession of a Controlled Substance in such an amount, without an intent to deliver (CR- 113-115). The jury found Haynes guilty of the lesser offense (CR-122). Due to enhancement allegations, punishment was assessed at confinement for thirty years in the Texas Department of Criminal Justice, Correctional Institutions Division (CR-128, RR V-30). Haynes gave timely notice of appeal (CR-132).

On appeal Haynes challenged the sufficiency of the evidence to show that Haynes knew that the amount of the controlled substance was such as to place it in a higher category for punishment. The Court of Appeals rejected that claim and

---

[1] The clerk's record containing court documents is designated as "CR" herein. The reporter's record is designated as "RR," with Roman numerals for volume numbers.

affirmed the judgment of the district court, though reforming it to correct an erroneous notation of an intent to deliver.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals delivered its opinion on July 30, 2015. No motion for rehearing was filed. Pursuant to a second extension of time, a petition for discretionary review is due to be filed on or before October 21, 2015.

## QUESTION FOR REVIEW

Did the Court of Appeals err in holding that the State was not required to prove that the defendant knew that the quantity of contraband was large enough to result in an increased punishment range?

## REASONS FOR REVIEW

Haynes asks this Court to adopt a statutory interpretation which would address a situation presented in some narcotics possession cases, where the statutory interpretation would be of critical importance in assuring that punishment was meted out in proportion to actual culpability. The cases in question are those narcotics possession cases where there may be a substantial gap between the actual quantity of narcotics under a person's control and what quantity the person knew he had under control. This issue is not about minor differences in factual details, such as whether a person possessed a half-smoked marijuana "roach" or a full "blunt," or whether a

2

person possessed one Vicodin tablets or two. The issue here concerns differences in quantity which, as a matter of law, alter the term of imprisonment which must be assessed. In order to understand how the issue arises here, it is useful to start with the salient facts.

## A. The Factual Background

Houston Police Officer Rafael Melgoza testified that in September, 2013 he conducted a surveillance of a house located at 8104 Double in Houston (RR III-12). Watching the house for four or five hours, Melgoza saw at least twenty people enter the house, stay for around two minutes, and then leave (RR III- 14, 35). As Melgoza noted, this observed pattern would be "consistent" with the sale of narcotics at the house (RR III-14). Melgoza acknowledged that the police relied on a "paid snitch" (defense counsel's term) for information, rather than having an undercover officer go inside and attempt a purchase (RR III-37). There was no evidence that Haynes personally delivered any quantity of cocaine to anyone or that Haynes personally handled any quantity of cocaine, and there was no evidence that Haynes had been in the house during any of the surveillance periods.

After the surveillance, a warrant for the search of the house was obtained, and the warrant was executed on September 26, 2013 (RR III-16). Melgoza had a team of SWAT officers conduct the initial entry, and he was then summoned to the scene

3

after the premises had been secured. Haynes, who was sitting on a couch at the house when Melgoza entered, was arrested. On a coffee table in front of Haynes was a bag containing 37.3 grams of crack cocaine (RR III-22). Melgoza said the police also found powder cocaine on the coffee table (RR III-23). Behind Haynes, on top of the couch pillows, was a loaded handgun (RR III- 27-28).[2] On a shelf the police found a digital scale (RR III-25). A prescription bottle containing hydrocodone but bearing no label was found in the house (RR III-25). Another prescription bottle for acetaminophen, issued to "Shannon Boggess or Sharon Boggess," also was found in the house (RR III- 26-27). The police also found a copy of Haynes' birth certificate in the house (RR III-51).

On cross-examination Melgoza said that there was no attempt to lift fingerprints or seek specimens of DNA from any of the items the State had offered into evidence (RR III-34). The police found no records indicating that Haynes either owned or leased the house (RR III- 34-35).

Houston Police Officer Marco Lopez, the SWAT team leader, testified that he was contacted on September 19, 2013 "regarding an ongoing narcotics investigation,"for which other officers were "in the process of obtaining a search

---

[2] The gun was later determined to be stolen but there was no evidence indicating that Haynes was the person who stole it (RR III-39).

4

warrant" (RR IV-6). The warrant was signed on September 24 (RR IV-6). Using a "big metal ram" known as a "moby," the SWAT team forced open the front door of the house (RR IV-10-11, 19). Lopez saw Haynes lying down on a couch (RR IV-21). Lopez could hear a child screaming and saw a child crawling towards Haynes on top of the couch, and Haynes was screaming and trying to get to the child (RR IV-21).

Lopez noticed that there were clear plastic baggies with "some white chunky substance" on a coffee table near the couch, "within arm's reach" for Haynes (RR IV-24). Lopez believed the substance was crack cocaine (RR IV-24). In the middle of the table was a digital scale (RR IV-25). An unlabeled prescription bottle was on the floor next to a shelf (RR IV-25). Lopez also saw another clear bag with a "white substance" in it. He said he believed, upon looking at it in court, that the substance was "crack cocaine," but he conceded that "to be honest with you, at the time, I just know I had some white substance" (RR IV-26). Lopez said that substance was on the "bar," rather than on the coffee table (RR IV-26).

On cross-examination Lopez said he had tried to research some information about the house before executing the warrant, but he did not know who the owner of the house was (RR IV-27). The electricity in the house was off, so there would be no current electric service record (RR IV-28). The conditions inside the house were "terrible" and "not livable," Lopez said (RR IV- 28, 32). Although the front door had

5

a lock, no keys to the door were found on Haynes (RR IV-31). There was plywood on the back door (RR IV-31).

Lopez did not believe any officer attempted to get a confession from Haynes (RR IV-30). As far as Lopez knew, no undercover officer ever bought narcotics from Haynes at the house (RR IV-33). Lopez did not know whether Haynes actually was attempting to live there (RR IV-32).

Houston Police Officer Joel Salazar testified that he participated in the SWAT team's execution of the warrant. Upon entering the house he saw Haynes lying on a couch, and he saw a small child on the couch, crawling toward Haynes (RR IV-40). Salazar stated without objection that Haynes "matched the description of the person that we had received in our briefing as our suspect," despite the obvious resort to hearsay in that testimony (RR IV-40). Haynes was startled and appeared to have been sleeping before the officers entered (RR IV-40). Salazar, who was the first officer to enter, testified that he noticed some alcohol containers and soda cans, but he did *not* see a weapon, even though he was "focusing" on Haynes (RR IV-41).[3] Salazar said the handgun was 1 ½ to 2 feet from Haynes, such that Haynes could have obtained

---

[3] How could it be that a trained SWAT officer missed seeing the handgun? The answer may be that the weapon actually was positioned "between the couch and the wall," visible to other officers looking in through a window although Salazar could not see it from his vantage point (RR IV-42).

it if he was sitting up (RR IV- 43-44). On cross-examination Salazar said he did not know of any fingerprints of Haynes being found on the gun (RR IV-46). Salazar never saw Haynes handling either the handgun or the drugs (RR IV-47).

Houston Police chemist Angelica Noyola testified that SX-14 contained cocaine and weighed 35.86 grams (RR IV-53). State's Exhibit 15 also was found to contain cocaine, weighing 0.96 grams (RR IV-56). State's Exhibit 16 was found to contain 1.18 grams of cocaine (RR IV-58). State's Exhibit 19 contained 6.99 grams of cocaine (RR IV-59). On cross-examination Noyola said she did not determine the purity of any of the substances containing cocaine (RR IV-63). Under Texas law, which counts adulterants and dilutants for purposes of the quantitative categories defined in the applicable statute, purity does not affect the issue presented here.

After the State rested, Haynes chose to not testify or present other evidence (RR IV- 66-67).

## B. The Burden of Proof Under *Apprendi*

In the Court of Appeals, Haynes raised two challenges to the sufficiency of the evidence. The first challenge addressed the applicability of "affirmative links" doctrine to the facts of the case. That doctrine has been discussed many times, by this Court and other courts. A good shorthand explanation is found in *Burrell v. State*, 445 S.W.3d 761 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd):

7

To prove unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Id.* at 405-06. This "affirmative links" rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406 (internal quotation marks omitted). Thus "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329(Tex. Crim. App. [Panel Op.] 1981)(citing *Wiersing v. State*, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978).

*Burrell, supra* at 764-65. Haynes disagrees with the Court of Appeals' affirmative-links analysis, but that application of that law to the facts is not itself an unsettled issue of law. Haynes' second point of error, however, presented an important and unsettled issue of Texas law. The Court of Appeals correctly noted a dearth of case law on the issue. Opin., p. 7. Discretionary review of the issue is justified under TEX. R. APP. PROC. 66.3(b). This sufficiency challenge concerns the scope of the burden of proof, *i.e.* whether a part of the State's burden of proof is to show that a defendant knowingly possessed a quantity of narcotics which required an increased punishment. If Haynes' view is correct, then the Court of Appeals also has misconstrued a Texas statute. *See* TEX. R. APP. PROC. 66.3(d).

8

The recognized standard for sufficiency of the evidence is stated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The *Jackson* standard requires proof as to every element of the charged offense. Less commonly encountered is sufficiency as to a lesser included offense, but when that is the offense for which a defendant is convicted, the *Jackson* standard is likewise applicable on appeal. In this cause, the relevant offense is the lesser offense of possession of cocaine, without an intent to deliver it.

The severity of a narcotics possession offense is dictated (at least in part) by the quantity of the contraband. For example, the possession of a whole bale of marijuana is more blameworthy than possession of a "roach," "blunt," or baggie containing a small quantity of marijuana. Possession of a kilogram "brick" of cocaine is more blameworthy than possessing an "eightball," possessing the "eightball" is more blameworthy than possessing a scarcely visible amount of cocaine residue inside a "crack pipe," and so forth.

This concept came into prominence in a number of federal appeals which followed the decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Based on the due process clause of U.S. CONST. Amend. XIV, the decision in *Apprendi* held that any fact, other than a defendant's prior record, which led to a statutory increase in the maximum punishment had to be proved

9

beyond a reasonable doubt. The quantity of contraband fits within the rule of *Apprendi*, for a quantity increase which crosses a statutory line of demarcation increases the punishment range as a matter of law. The question is whether *knowledge* of an increase in quantity, sufficient in its magnitude to step up the punishment level, must be taken into account in applying *Apprendi* to a Texas narcotics possession offense.

In *United States v. Gamez-Gonzalez*, 319 F.3d 695 (5th Cir. 2003), *cert. denied* 538 U.S. 1068, 123 S.Ct. 2241, 155 L.Ed.2d 1126 (2003), the federal appellate court held that knowledge of the drug quantity was not an element of a violation of 21 U.S.C. §841(a). That statute reads in part: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ..." Punishments for violations of Section 841(a) then are graded according to quantity, as set forth in 21 U.S.C. §841(b). *Gamez-Gonzalez* held that the fact that a larger quantity dictated a higher punishment under Section 841(b) did not bring *Apprendi* into play. 319 F.3d at 699-700. The Fifth Circuit reasoned that subsection (b) of the federal statute, by its explicit terms, "prescribes penalties based on drug type and quantity *involved* in the unlawful act." *Gamez-Gonzalez,* at 699 (emphasis in original). Drawing upon the pre-*Apprendi* decision in *United States*

10

*v. Valencia-Gonzalez*, 172 F.3d 344, 346 (5ᵗʰ Cir. 1999), *cert. denied* 528 U.S. 894, 120 S.Ct. 222, 145 L.Ed.2d 187 (1999), *Gamez-Gonzalez* interpreted the use of the word "involved" as effectively creating "strict liability punishment," such that knowledge of quantity did not matter. *Id.,* at 700.[4] The Fifth Circuit noted that several other federal circuits had agreed with that holding. *Id.*[5] Of course all of those federal courts were interpreting the same federal statute, not Texas law. Furthermore, the statute at issue in *Gamez-Gonzalez* and cases cited therein concerned distribution, manufacturing, or possession with the intent to distribute. In *Gamez-Gonzalez*, for example, the defendant was driving a truck loaded with 123 kilograms of cocaine when stopped at a border checkpoint. Obviously that quantity was for distribution, or as it is called in Texas law, delivery.

## C. Applying *Apprendi* to Texas Narcotics Law

The Texas statute underlying the indictment, TEX. HEALTH & SAFETY

---

[4] There was no discussion of Congressional intent in *Gamez-Gonzalez* to support the "strict liability" interpretation of the statute. As a general principle, strict liability is not favored in criminal law, as was discussed in *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), but that principle mainly applies to factors which distinguishes criminal conduct from non-criminal conduct. As far as Haynes can determine, the possible synthesis of *Apprendi* and *X-Citement Video* with respect to increased statutory punishments in narcotics cases has not been addressed by the Supreme Court or by this Court. In any event, the difference between the federal and Texas statutory language, discussed in this petition, avoids the need to study such a possible synthesis.

[5] For a case where the Fifth Circuit departed from *Gamez-Gonzalez* under the particular pleadings in the case, see *United States v. Javier Cruz*, 388 F.3d 150 (5ᵗʰ Cir. 2004), *cert. granted and vacated*, 544 U.S. 1013, 125 S.Ct. 1969, 161 L.Ed.2d 846 (2005).

11

CODE §481.112, provides:

> (a) Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.

> (b) An offense under Subsection (a) is a state jail felony if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, less than one gram.

> (c) An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams.

> (d) An offense under Subsection (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams.

The phrase"to which the offense applies" in Section 481.112 is somewhat similar to a reference to the amount "involved," which is the wording used in 21 U.S.C. §841(b). It is not surprising that the Texas law applicable to delivery or manufacturing of narcotics, or to the possession of narcotics with an intent to deliver the narcotics, would have a similarity to the federal statute applicable to "distributing." There is, moreover, a plausible argument that someone involved in manufacturing or delivery is likely to have at least an "in the ballpark" idea of how

much of the product he is manufacturing or delivering.[6] In fact, there is case law concerning possession with intent to deliver which treats quantity itself as some proof of *mens rea.*

Haynes was not found guilty of delivery, however, and was not found guilty of possessing cocaine with intent to deliver it. The jury's verdict only found that Haynes violated TEX. HEATH & SAFETY CODE §481.115, which provides in pertinent part:

> (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.
>
> ...
>
> (c) An offense under Subsection (a) is a felony of the third degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams.
>
> (d) An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 400 grams.

Without a doubt, the quantity of cocaine Haynes was guilty of possessing made a

---

[6] The manufacture or delivery of illegal narcotics is like any other kind of commerce, in that the quantity of product a producer desires to put into the marketplace will be a primary consideration in the operation of the business.

13

significant difference in the applicable punishment range under Texas law. The core principle of *Apprendi* therefore should apply.

The key question is whether, under Texas law, there is a requirement that the element of knowledge applies to the differences in quantity which dictate statutory differences in punishment for a simple possession offense. As a general principle, the law is on Haynes' side. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App. – Houston [14th Dist.] 2006, pet. ref'd) observed that "[t]he element of knowing possession requires evidence that the accused possessed the substance knowingly rather than fortuitously,"citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Texas statutory law as to simple possession does not track 21 U.S.C. §841(b). The Texas law does not refer to a "quantity *involved* in the unlawful act," as the federal law does. Rather, Texas law refers to "the amount of the controlled substance possessed." That in turn begs the question of the meaning of the word "possessed." Ample case law, such as *Moreno, Brown,* and many other decisions, supports the view that "possession" really means a *knowing* possession. Since the element of "possession" means a knowing possession, the statutory reference to an amount "possessed" should be construed as requiring knowledge as to quantity, for otherwise there is not genuine "possession" of that quantity.

Haynes' position is not only the most consistent with *Apprendi*, but also is

14

consistent with common sense and the principle of proportionality. Haynes' view adds protection against a defendant's "fortuitous" association with a larger quantity of narcotics and a resulting enhanced punishment. For example, it would be "fortuitous" if a hitchhiker heading from McAllen to San Antonio shared a joint of marijuana with the driver of a car, perhaps even aiding the journey by buying some gasoline or helping to fix a flat tire, only to discover at the Falfurrias checkpoint that there were thirty pounds of marijuana hidden in the car. While the hitchhiker knowingly possessed *some* marijuana, in all fairness, the hitchhiker should not be punished for possessing the hidden thirty pounds. The same principle applies to cocaine and other drugs.

The State could argue that the statutory language is ambiguous, rather than clearly favoring Haynes' position. If so, the existence of statutory ambiguity still cuts in favor of Haynes. Given competing statutory interpretations, the rule of lenity would favor the interpretation which would lead to lesser punishment. *See Cuellar v. State*, 70 S.W.3d 815, 824-25 (Tex. Crim. App. 2002)(Cochran, J., concurring).

## D. Insufficient Evidence of Knowledge as to Quantity

Since the Court of Appeals did not agree with Haynes' position as to the State's burden of proof, it did not analyze the sufficiency of the evidence from the perspective of requiring the State to prove that Haynes knew he possessed a large

enough quantity to subject him to a higher punishment. This is the type of issue which probably warrants a remand for the Court of Appeals to conduct such an evaluation. It is worth noting, however, that there are some genuine reasons to doubt that Haynes knew about the full amount of cocaine found in the house.

The Court of Appeals conducted a standard "affirmative links" analysis. Opin., pp. 4-5. Some of the standard "affirmative links" simply were not present at all in this cause. Furthermore, not all "affirmative links" discriminate as to knowledge of an amount. The important link of "presence" is neutral in the sense that Haynes was present in the same house as *part* of the cocaine, as well as being in the same house as *all* of it. Suppose, for example, that someone asked Haynes to stay in the house and keep an eye on some cocaine, along with the infant. It is debatable as to what would have been within Haynes' view and whether or not Haynes would recognize what he saw. Lopez, the SWAT team leader, said that when he first saw the 37-gram batch of cocaine, he did not know that it was cocaine (RR IV-26). There was no evidence that Haynes would recognize it better than a trained narcotics officer would.

The possession of a weapon might, in some situations, suggest a knowing possession of a larger quantity because there would be more economic value (and possibly human life) at risk, but there was no proof that Haynes had possession of the handgun. Even if he did, a man inside a derelict house in a tough part of Houston,

16

having custody of an infant, might well want a gun available. Whether or not there was cocaine in the house, thieves might break in, seeking anything in the house worth taking, such as copper pipe.

In short, the evidence in this cause did not prove beyond a reasonable doubt that Haynes had knowledge of the full amount of cocaine.

## PRAYER FOR RELIEF

Wherefore Haynes prays that this petition for discretionary review be granted.

Respectfully submitted,

*/s/ Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.
Attorney at Law
Texas Bar No. 04457300
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
E-mail:winstoncochran@comcast.net
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing petition for discretionary review was computer-generated, using 14-point font for text and 12-point font for footnotes. Omitting the portions specified in TEX. R. APP. PROC. 9(i)(1), the petition contains 3841 words.

*/s/ Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.

# CERTIFICATE OF SERVICE

I certify that copies of this petition have been served on counsel for the State electronically or by mail at the following addresses on October 21, 2015:

Harris County District Attorney's Office
Appellate Division
Attention: Jessica Caird
1201 Franklin, Suite 600
Houston, TX 77002

Hon. Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, TX 78711-3046

*/s/ Winston E. Cochran, Jr.*
Winston E. Cochran, Jr.

# APPENDIX

**Opinion and Judgment of the Fourteenth Court of Appeals**

**Affirmed as Reformed and Memorandum Opinion filed July 30, 2015.**



In The

## Fourteenth Court of Appeals

---

NO. 14-14-00353-CR

---

### ANDREW DEMOND HAYNES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1411654**

---

## MEMORANDUM OPINION

Appellant, Andrew Demond Haynes, was charged by indictment with possession of cocaine weighing more than four grams and less than 200 grams with the intent to deliver. A jury convicted appellant of the lesser included offense of possession of cocaine weighing more than four grams and less than 200 grams, and the trial court sentenced him to thirty years' confinement in the Texas Department of Criminal Justice. In two issues, appellant contends the evidence is insufficient to support his conviction. We reform the judgment to reflect that appellant was

convicted of possession of more than four grams but less than 200 grams of cocaine. As reformed, we affirm.

## I. BACKGROUND

The narcotics division of the Houston Police Department conducted a surveillance of a house in Harris County and observed approximately twenty people arriving at the house walking, driving or biking, remaining at the house one to two minutes and then leaving the house; a police officer testified this activity was consistent with narcotics trafficking. After observing the individuals' actions, the officer used a "paid snitch" to purchase narcotics in the house. The officer obtained a "no-knock" search warrant to enter the house, and utilized the assistance of S.W.A.T. officers to enter the premises.

The officers found appellant sitting on a couch. He appeared to have been lying on the couch prior to the officers' entry. He was screaming and appeared to have been startled when the officers entered the house. Appellant matched the description of the suspect whom the officers had been observing. The narcotics officer located crack cocaine and two baggies of powder cocaine on the coffee table in front of appellant, and he found a baggie of powder cocaine on a bar area next to some ammunition. A gun was located on the back of the couch where appellant was sitting; it was loaded with a full clip and a second clip was recovered. The gun was determined to be stolen. The police also found a birth certificate in appellant's name.

When the S.W.A.T. team leader entered, he heard a small child screaming and trying to crawl from one end of the couch to the other toward appellant. On the coffee table in front of appellant was a cell phone, along with a baggie which included crack cocaine. Pills were found on the floor in a bottle, later determined to be hydrocodone, and which were not prescribed to appellant. The home

2

appeared to be a "flop house," was without utilities, in "terrible" condition and "not livable." The front door had a lock and plywood covered the rear entrance of the house.

Appellant was indicted on the felony charge of possession of cocaine weighing more than four grams and less than 200 grams with the intent to deliver. The indictment included two enhancement paragraphs. At trial, appellant cross-examined the State's witnesses, but did not present evidence in his defense. The jury found appellant guilty of the lesser included offense of possession of cocaine weighing more than four grams and less than 200 grams, and the trial court sentenced him to thirty years' confinement in the Texas Department of Criminal Justice.

## II. ANALYSIS

In two issues, appellant contends the evidence is legally insufficient to support his conviction.

### A. Standard of review

When reviewing sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We do not sit as the thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id.* Our duty as the reviewing court is to ensure the evidence presented

3

actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

## B. Sufficiency of evidence

As charged in the present case, to prove a defendant unlawfully possessed a controlled substance, the State must demonstrate that the accused (1) exercised care, control, or management over the substance and (2) knew what he possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The State must establish by way of direct or circumstantial evidence that the appellant's connection with the contraband was more than fortuitous. *Id.*

In cases where the accused is not in the exclusive possession of the place the contraband is found, the State must show additional "affirmative links" between the accused and the contraband. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). This "affirmative links" rule protects an innocent bystander from conviction simply because he was in proximity to substances possessed by another. *Evans*, 202 S.W.3d at 161–62. The following relevant factors may affirmatively link an accused to the contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

4

*Olivarez*, 171 S.W.3d at 291 (citing *Washington v. State*, 902 S.W.2d 649, 652 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd)).

We view each case on a fact-specific basis. *See Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). "It is not the number of links that is dispositive, but rather, the logical force of all the evidence, both direct and circumstantial." *Id.* (citing *Evans*, 202 S.W.3d at 162).

In his first issue, appellant contends that there was no evidence of several of the "affirmative links" because appellant did not appear to be under the influence of narcotics, he made no furtive gestures, there was no odor of narcotics, no drug paraphernalia was found (other than the digital scale), no large amount of cash was in the house, and there was no conduct indicating appellant's consciousness of guilt.

The record reflects that at the time law enforcement entered the home, appellant appeared to have been lying on the couch with a two-year-old child located next to him. Crack cocaine and powder cocaine were found, as well as, hydrocodone prescription pills, which were not prescribed to appellant, were found. Specifically, 37.3 grams and 1.7 grams of powder cocaine were located on the coffee table in front of appellant. In other parts of the home, various clear plastic bags with white substances were found. Those baggies were tested and determined to be cocaine. A digital scale was present, which law enforcement testified is commonly used to weigh the cocaine. As noted above, there was a handgun present on the couch, with live rounds also on the couch next to the appellant, and appellant's birth certificate was found inside the home.

When viewed in the light most favorable to the verdict, we hold that a rational jury could connect appellant with the cocaine and conclude that he was

guilty beyond a reasonable doubt of the essential elements of the offense of possession of cocaine. *See Cuong Quoc Ly v. State*, 273 S.W.3d 778, 781–82 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (concluding evidence was sufficient where contraband was found in defendant's truck and accessible to him); *Hyett v. State*, 58 S.W.3d 826, 832 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding evidence was sufficient to support conviction where affirmative links established control over the contraband). We overrule appellant's first issue.

## C.  Knowledge of amount of cocaine

In his second issue, appellant contends that the evidence is insufficient to support his conviction because the State did not prove that he knowingly possessed the actual amount of cocaine alleged in the indictment.

A person commits the offense of unlawful possession of a controlled substance where the State proves beyond a reasonable doubt that the defendant "knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 . . . ." *See* Tex. Health & Safety Code Ann. § 481.115(a) (West, Westlaw through 2015 R.S.); *see also Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). "Possession" is defined as "actual care, custody, control, or management. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West, Westlaw through 2015 R.S.).

Appellant contends that because the jury returned a verdict for the lesser offense of possession without intent to deliver, the evidence must be sufficient to prove his knowledge of the specific amount of cocaine he was charged with possessing. Section 481.115(a) does not require that the State prove he knew the specific amount of cocaine in order to obtain a conviction. *See* Tex. Health & Safety Code Ann. § 481.115(a). Rather, a defendant may be convicted of the "offense" if he knowingly or intentionally possesses a controlled substance. The

6

specific amounts set forth in subsections (b) through (d) come into play when determining the degree of the felony charge.[1] Section 481.115(d) refers to Section 481.115(a), providing that a person commits an offense if he knowingly or intentionally possesses a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West, Westlaw through 2015 R.S.). There is nothing in the statute requiring proof of the defendant's knowledge of the amount of cocaine which he is charged with possessing. *See id.* Appellant has not cited any Texas case requiring this additional element of proof and we have found none.

Relying on *United States v. Gamez-Gonzalez*, 319 F.3d 695, 697 (5th Cir. 2003), *cert. denied*, 538 U.S. 1068 (2003), and acknowledging that drug quantity was not an element of the federal drug violation at issue,[2] appellant also asserts that because the offense of possession includes knowledge, then under Texas law, "knowledge" extends to the issue of quantity. In *Gamez-Gonzalez*, the Fifth Circuit determined that knowledge of the quantity of the controlled substance was a factor to be proved only because quantity related to an increase in the defendant's sentence. The court held that, in order to obtain a conviction, the proof required was proof of an amount within the limit set forth in the statute, but not proof that the defendant had specific knowledge of the amount. *See Gamez-Gonzalez*, 319 F.3d at 699–700 (concluding that knowledge of a specific amount related solely to

---

[1] "An offense under Subsection (a) is a state jail felony if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, less than one gram. (c) An offense under Subsection (a) is a felony of the third degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams. (d) An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(b), (c), (d) (West, Westlaw through 2015 R.S.).

[2] 21 U.S.C.A. § 841(a) provides "[i]t shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *See* 21 U.S.C.A. § 841(a) (West 2010).

range of punishment). The Fifth Circuit also explained that five other federal circuit courts had considered claims similar to appellant's and rejected them. *See id.* Therefore, because the *Gamez-Gonzalez* court looked to the defendant's knowledge of the quantity for purposes of an increase in his sentence, we conclude that appellant's reliance on *Gamez-Gonzalez* is misplaced.

In sum, as set forth above, we conclude the evidence is sufficient to support the conviction and there is no additional burden imposed on the State to prove appellant's knowledge of the specific amount of cocaine in appellant's possession. We overrule appellant's second issue.

Finally, we note that the judgment contains a clerical error as it reflects that appellant was convicted of possession with intent to deliver cocaine of greater than four but less than 200 grams. However, the clerk's record reflects that appellant was convicted of possession of more than four grams but less than 200 grams of cocaine. Accordingly, we reform the trial court's judgment to reflect that appellant was convicted of possession of more than four grams and less than 200 grams of cocaine. *See Hardin v. State*, 951 S.W.2d 208, 212 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that judgment should be reformed to be consistent with jury's verdict). As reformed, the judgment is affirmed.

/s/ John Donovan
Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

8

July 30, 2015



# JUDGMENT

## The Fourteenth Court of Appeals

ANDREW DEMOND HAYNES, Appellant

NO. 14-14-00353-CR            V.

THE STATE OF TEXAS, Appellee

---

This cause, an appeal from the judgment in favor of appellee, The State of Texas, signed April 25, 2014, was heard on the transcript of the record. We have inspected the record and find no error in the judgment requiring reversal, but there was error in the judgment as entered, which is capable of reformation by this Court. Therefore, the judgment is **REFORMED** to reflect that appellant was convicted of the offense of possession of cocaine weighing more than four grams and less than 200 grams. We order the judgment of the court below **AFFIRMED** as **REFORMED**.

We further order this decision certified below for observance.